IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

LUTFALLAH T. SAWABINI,

                Plaintiff,

     v.

O'CONNOR HOSPITAL and EDWARD
McGRATH,

                Defendants.

_____

Civil Action No.
3:15-CV-0692 (LEK/DEP)

APPEARANCES:

FOR PLAINTIFF:

LUTFALLAH T. SAWABINI, *Pro Se*
11 Manatee Avenue
Sidney, NY 13838

FOR DEFENDANTS:

[NONE]


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT, RECOMMENDATION, AND ORDER

Plaintiff Lutfallah T. Sawabini, who is proceeding *pro se*, has commenced this action against defendants O'Connor Hospital and Edward McGrath alleging deprivation of his civil rights, including, *inter alia*, under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* Plaintiff's complaint is accompanied by a motion for leave to proceed *in forma pauperis* ("IFP"). Plaintiff's complaint and accompanying IFP application have been forwarded to me for review. Based upon my consideration of those documents, plaintiff's IFP application is denied without prejudice to renewal, and I recommend that his complaint be dismissed with leave to amend.

## I.     BACKGROUND

Plaintiff commenced this action on or about June 8, 2015. Dkt. No. 1. As defendants, plaintiff has named O'Connor Hospital ("O'Connor"), identified as an "employer," and Edward McGrath, whose official position is listed as "chief operating officer." *Id.* at 1, 2. Plaintiff's complaint alleges that plaintiff applied for an advertised position at O'Connor for a hospital risk manager, but was not hired. *Id.* at 8. According to plaintiff, O'Connor refused to hire him based upon his race or color, religion, sex, and/or national

origin.[1] *Id.* at 2, 8. Plaintiff further alleges that after filing a complaint with the New York State Division of Human Rights ("DHR"), regarding the defendants' failure to hire him, they retaliated against him by (1) interfering with his ability to acquire other employment; (2) causing him to become unlawfully arrested on April 22, 2014; and (3) denying him subsequent medical treatment. *Id.* at 10-11. With respect to the alleged unlawful arrest, plaintiff has attached a document that appears to reflect that he was detained by the Sidney Police Department for the purpose of a mental health evaluation pursuant to an order issued under New York Mental Hygiene Law § 9.45.[2] *Id.* at 12.

---

[1]     Plaintiff alleges he is an "AMERICANIZED" Palestinian Arab. Dkt. No. 1 at 2 (emphasis in original).

[2]     Section 9.45 of the New York Mental Hygiene Law provides as follows:

> The director of community services or the director's designee shall have the power to direct the removal of any person, within his or her jurisdiction, to a hospital approved by the commissioner pursuant to subdivision (a) of section 9.39 of this article, or to a comprehensive psychiatric emergency program pursuant to subdivision (a) of section 9.40 of this article, if the parent, adult sibling, spouse or child of the person, the committee or legal guardian of the person, a licensed psychologist, registered professional nurse or certified social worker currently responsible for providing treatment services to the person, a supportive or intensive case manager currently assigned to the person by a case management program which program is approved by the office of mental health for the purpose of reporting under this

II.    DISCUSSION

A.    Application for Leave to Proceed *In Forma Pauperis*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed IFP if it determines that he is unable to pay the required filing fee. 28 U.S.C. § 1915(a)(1).[3] Pursuant to section 1915, when a plaintiff seeks leave to

_____

section, a licensed physician, health officer, peace officer or police officer reports to him or her that such person has a mental illness for which immediate care and treatment in a hospital is appropriate and which is likely to result in serious harm to himself or herself or others. It shall be the duty of peace officers, when acting pursuant to their special duties, or police officers, who are members of an authorized police department or force or of a sheriff's department to assist representatives of such director to take into custody and transport any such person. Upon the request of a director of community services or the director's designee an ambulance service, as defined in subdivision two of section three thousand one of the public health law, is authorized to transport any such person. Such person may then be retained in a hospital pursuant to the provisions of section 9.39 of this article or in a comprehensive psychiatric emergency program pursuant to the provisions of section 9.40 of this article.

N.Y. M.H.L. § 9.45.

[3]    The language of that section is ambiguous, in that it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). Courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed.

proceed IFP, the court must determine whether he has demonstrated

sufficient economic need to proceed without prepaying the required filing

fee. 28 U.S.C. § 1915(a)(1).

The decision of whether to grant an application to proceed IFP rests

within the sound discretion of the court. *Anderson v. Coughlin*, 700 F.2d 37,

42 (2d Cir. 1983). Section 1915 only provides that a court must be satisfied

"that the person is unable to pay such fees or give security therefor" prior to

granting IFP status. 28 U.S.C. § 1915(a)(1). To make this threshold

showing, a plaintiff must demonstrate "that paying such fees would

constitute a serious hardship on the plaintiff, not that such payment would

render plaintiff destitute." *Fiebelkorn v. United States,* 77 Fed. Cl. 59, 62

(Fed. Cl. 2007) (citing *Adkins v. E.I. DuPont de Nemours & Co.,* 335 U.S.

331, 339 (1948)); *see also Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d

Cir. 1983) ("Section 1915(a) does not require a litigant to demonstrate

absolute destitution[.]"); *accord*, *Lee v. McDonald's Corp.*, 231 F.3d 456,

459 (8th Cir. 2000). As the Second Circuit has noted, "no party must be

made to choose between abandoning a potential meritorious claim or

Cl. 2006); *see also Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y.
2002).

5

foregoing the necessities of life." *Potnick,* 701 F.2d at 244 (citing *Adkins*, 335 U.S. at 339).

Section 1915 requires that a plaintiff submit an affidavit reflecting all of his assets in support of an IFP application. 28 U.S.C. § 1915(a)(1). Without the submission of a completed financial affidavit, a plaintiff's application is incomplete, and this defect alone warrants denial of the IFP application. *See, e.g.*, *U.S. v. Copen*, 378 F. Supp. 99, 103 (S.D.N.Y. 1974) ("Leave to proceed in forma pauperis may be obtainable only upon submission by the party of an affidavit made as required by [28 U.S.C. § 1915]."); *accord, Bey v. Syracuse Univ.*, 155 F.R.D. 413, 414 (N.D.N.Y. May 1994) (Scullin, J.).

In this instance, while plaintiff's IFP application is impressively detailed, his full disclosure of his expenses may ultimately prove detrimental to his request. *See generally* Dkt. No. 2. For instance, plaintiff avers that he is currently able to afford filing fees in other pending litigation amounting to $800.00, as well as the costs associating with litigating those actions, including purchasing two printers at a cost of $200.00 each, ink cartridges costing $20.00 per month, and copies of legal papers in the amount of $100.00 per month. Dkt. No. 2 at 4. In addition, plaintiff and his wife care for four pets, two of which have chronic ailments that require care costing an

average of $200.00 per month. *Id.* As a final example, plaintiff states that he has hired a "limo service" at a rate of $300.00 to transport him to the hospital. *Id.* at 5. These expenses reflect that plaintiff likely does not risk destitution in the event he is required to pay the applicable filing fee in connection with this action.

Ultimately fatal to plaintiff's IFP application, however, is that he has not submitted a completed form. *Id.* at 2. In response to question number four, asking him to state the total amount he has in "any cash or checking or savings accounts," plaintiff answered, "Will discuss to judge confidentially – money decreasing fast." *Id.* Until plaintiff answers this pivotal question, which may well inform whether he qualifies for IFP status, his application must be denied. Within thirty days of the date of this order, plaintiff must either pay the full filing fee or submit a completed IFP application in accordance with section 1915 for the court's review.

      B.    <u>Sufficiency of Plaintiff's Claims</u>

           1.    <u>Standard of Review</u>

In the event plaintiff can meet the financial criteria for commencing this case IFP, the court will then have to consider the sufficiency of the claims set forth in his complaint in light of 28 U.S.C. § 1915(e). Section

1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and courts should exercise caution *sua sponte* dismissing a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson*, 700 F.2d at 41. The court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See*, *e.g.*, *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the

face of the complaint.'" *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory . . . or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d. 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court is guided by applicable requirements of the Federal Rules of Civil Procedure for guidance. Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense, and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

2.    Analysis of Plaintiff's Claims

Plaintiff's complaint sets forth seven separate causes of action.

a.    First Cause of Action

In his first cause of action, plaintiff accuses defendant O'Connor and Barbara Greene – who is not named as a defendant in either the caption or the portion of the body of the complaint in which the parties are identified – of discriminating against him by failing to hire him as a risk manager with O'Connor. Dkt. No. 1 at 9-10. Plaintiff also alleges that a security agent employed at O'Connor, as well as counsel for O'Connor, uttered words reflecting that the failure to hire was based on unlawful discrimination. *Id.*

To establish a *prima facie* claim of employment discrimination based upon a refusal to hire, a plaintiff must demonstrate that "(1) he is a member of a protected class; (2) he applied and was qualified for a job for which the employer was seeking applicants; (3) he suffered an adverse employment action; and (4) the circumstances surrounding that action permit an inference of discrimination." *Rich v. Assoc. Brands, Inc.*, 559 F. App'x 68 (2d Cir. 2014) (alterations, quotation marks, and emphasis omitted). In this case, plaintiff has failed to allege sufficient facts plausibly suggesting that O'Connor, or any of its employees, did not hire plaintiff for discriminatory

purposes. Plaintiff's allegation that a security officer stationed at O'Connor "heckl[ed]" him is conclusory and does not plausibly suggest that any of the named defendants were motivated by discriminatory animus when they refused to hire him. Because there are no allegations in plaintiff's complaint that give rise to a plausible claim of employment discrimination, I recommend that the plaintiff's first cause of action be dismissed.[4]

### b.     Second Cause of Action

Plaintiff's second cause of action is set forth succinctly in one paragraph, alleging that "[t]he defendants [O'Connor] and McGrath misstated the truth resulting rejection [sic] of the plaintiff's claim of discrimination[.]" Dkt. No. 1 at 10. Liberally construed, this allegation relates to statements made on behalf of O'Connor to the DHR in connection with plaintiff's complaint to that agency regarding his discrimination allegations and purports to give rise to a claim of defamation arising under state law. To state a claim for defamation under New York law, a plaintiff must allege "(1) an oral defamatory statement of fact, (2) regarding the plaintiff, (3)

---

[4]     Plaintiff's employment discrimination claims asserted against any individually named defendant also fail because Title VII does not permit individual liability, even against those with supervisory control. *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995), *abrogated on other grounds by Burlington Ind. v. Ellerth*, 524 U.S. 742 (1998)).

published to a third party by the defendant, and (4) injury to the plaintiff."

*Weldy v. Piedmont Airlines*, 985 F.2d 57, 61 (2d Cir. 1993). As it pertains to

plaintiff's specific allegation against O'Connor's allegedly false statements

made to the DHR, it is well-established that statements made during the

course of a quasi-judicial proceeding, like those held before the DHR, are

privileged and cannot serve as the basis for a defamation cause of action

under New York law. *See, e.g., Silver v. Mohasco Corp.*, 94 A.D.2d 820,

822 (3d Dep't 1983); *accord, Burnett v. Trinity Inst. Homer Perkins Ctr., Inc.*,

No. 10-CV-0681, 2011 WL 281023, at *5 (N.D.N.Y. Jan. 25, 2011) (Sharpe,

J.). Accordingly, I recommend plaintiff's claim be dismissed on this basis.

c.     Third Cause of Action

In his third cause of action, plaintiff alleges that (1) the DHR's decision

"was capricious and abusive," (2) he was "heckled and degraded in the

investigation by the defendants [O'Connor] and McGrath," and (3) he was

not hired by O'Connor on the basis of "these discriminatory act6ions [sic]

and words." Dkt. No. 1 at 10. Setting aside the fact that the DHR is not a

named defendant in the action, plaintiff's claim regarding the character of

the agency's decision must fail because this court lacks jurisdiction to

adjudicate the claim. New York Executive Law § 298 provides an exclusive

mechanism for appealing a decision rendered by the DHR, which requires any challenge be commenced "in the supreme court in the county wherein the unlawful discriminatory practice" allegedly occurred. N.Y. Exec. L. § 298. Federal courts do not have jurisdiction to hear appeals from DHR decisions. *See York v. Assoc. of Bar of City of N.Y.*, 286 F.3d 122, 127 (2d Cir. 2002) ("[O]nce a plaintiff brings a case before the [DHR], he or she may appeal only to the Supreme Court of the State of New York."). To the extent that plaintiff claims that he "was heckled and degraded in the investigation by the defendants O'Connor and McGrath," he again is asserting defamation, which is subject to the same analysis as above regarding plaintiff's second cause of action. For these reasons, I recommend dismissal of plaintiff's third cause of action.

### d.    Fourth Cause of Action

Plaintiff's fourth cause of action accuses the defendants of wrongful arrest, apparently in reference to being taken into custody by the Sidney Police Department on April 22, 2014, pursuant to an order issued under New York Mental Health Law § 9.45. Dkt. No. 10-11, 12. Plaintiff characterizes the arrest as "defamation of character" and alleges that

defendants intended "to cause to mental anguish, silencing extortion, black mailing, black balling and [b]oycotting." Dkt. No. 1 at 10-11.

"Under New York law, the elements of a false imprisonment claim are (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (quotation marks, brackets, and citations omitted).[5]

Plaintiff's complaint is devoid of any specific facts surrounding the allegedly unlawful arrest. Absent such facts, the court is unable to discern whether plaintiff has stated a plausible claim. I therefore recommend that plaintiff's fourth cause of action be dismissed.

### e.   Fifth and Seventh Causes of Action

In his fifth cause of action, plaintiff alleges that the defendants retaliated against him by preventing him from seeking employment elsewhere. Dkt. No. 1 at 11. Plaintiff alleges that the retaliation was based

_____

[5]      This claim could be construed as asserting a pendent state law claim, and/or as asserting a cause of action under 42 U.S.C. § 1983 for violation of plaintiff's Fourth Amendment rights. The elements of these two claims are identical. *See Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir. 1992) ("The elements of a claim of false arrest under [section] 1983 are substantially the same as the elements of a false arrest claim under New York law.").

upon his "background, culture, Age and other base of discrimination just for applying." *Id.* Plaintiff's seventh cause of action echoes this claim, similarly alleging that defendants have denied and interfered with his ability to obtain other employment. *Id.* at 11.

Liberally construed, these allegations purport to assert claims of retaliation under Title VII.[6] To state a cognizable retaliation claim under Title VII, a plaintiff must allege facts plausibly suggesting that "(1) he was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action."

---

[6]     In pertinent part, Title VII provides as follows:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

*Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014) (alterations and quotation marks omitted).

Fatal to plaintiff's retaliation claim is that there are no allegations in the complaint plausibly suggesting that defendants' statements caused or contributed to plaintiff not being hired by any other prospective employers. Plaintiff's conclusory allegation that "[d]efendants retaliated against him" by providing "fabricat[ed] . . . statements" to "other employers in three counties," without more, is not sufficient to state a claim of retaliation under Title VII. Accordingly, because plaintiff's complaint, in its current form, does not state a plausible retaliation claim, I recommend those claims be dismissed.

f.    <u>Sixth Cause of Action</u>

In his sixth cause of action, plaintiff alleges that he was denied medical services and that the denial was based upon discriminatory motives. Dkt. No. 1 at 11. As a place of public accommodation, O'Connor is precluded by New York law from denying services based on protected criteria, including, among other things, race and national origin. *See* N.Y. Exec. L. § 296(1)(a) ("It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent,

agent or employee of any place of public accommodation. . . . because of the race, creed, color, national origin, sexual orientation, military status, sex, or disability or marital status of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof . . . ."); N.Y. Exec. L. § 292(9) ("The term 'public accommodation, resort or amusement' shall include. . . hospitals[.]"). Plaintiff's complaint, however, simply alleges that, "[a]fter applying for the [job with O'Connor], [he] was cruelly and with out [sic] Justifications [sic], and was denied medical service by defendants for physical [sic] medical condition by reason of their discrimination against [him]." Dkt. No. 1 at 1. This allegation is conclusory and fails to provide any facts plausibly suggesting a discrimination claim against any of the defendants. For example, plaintiff fails to identify any circumstances surrounding his requests for treatment, including who specifically denied him treatment. Having reviewed the single paragraph setting forth the sixth cause of action, I am unable to conclude that it states a plausible claim of discrimination, and therefore recommend that it, too, be dismissed.

C.  Leave to Amend

Based upon a review of the seven causes of action contained within plaintiff's complaint I have recommended that each be dismissed. Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F. Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). Here, given the procedural history of this action, the court must determine whether plaintiff is entitled to the benefit of this general rule.

Most of the deficiencies identified in plaintiff's complaint could feasibly be cured through the inclusion of greater factual detail in his pleading. Accordingly, I recommend that plaintiff be permitted to amend his complaint, if desired, to address the deficiencies identified in this report.

In the event plaintiff chooses to file an amended complaint, he is advised that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'" *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *Pourzandvakil v. Humphry*, No. 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in his amended complaint, plaintiff must clearly set forth the facts that give rise to the claim, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (quotation marks omitted)).

## III.    SUMMARY AND RECOMMENDATION

Plaintiff's IFP application in this matter is incomplete, failing to fully disclose the extent of the assets available to him to defray the expense of commencing this action. Plaintiff's IFP application will therefore be denied, without prejudice. Turning to a review of plaintiff's complaint, I conclude that all of the seven causes of action asserted are subject to dismissal, but recommend that plaintiff be permitted leave to file an amended complaint in an effort to cure the deficiencies set forth in this report.

Based upon the foregoing, it is hereby

ORDERED that plaintiff's motion for leave to proceed *in forma pauperis* in this action (Dkt. No. 2) is DENIED, without prejudice; and it is further

ORDERED that within thirty days of the date of this decision, plaintiff either remit the full $400 filing fee or file an amended and complete application for leave to proceed *in forma pauperis*; and it is further hereby respectfully

RECOMMENDED that plaintiff's complaint in this action be DISMISSED in its entirety, with leave to replead within thirty days of the date of the court's decision acting upon this report and recommendation.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:  August 31, 2015
        Syracuse, New York

David E. Peebles
U.S. Magistrate Judge