UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

LUTFALLAH SAWABINI,

                Plaintiff,

   -against-                              3:15-CV-0692 (LEK/DEP)

O'CONNOR HOSPITAL, *et al.*,

                Defendants.

---

**DECISION AND ORDER**

## I.    INTRODUCTION

Pro se plaintiff Lutfallah Sawabini brought this action against (among other individuals and entities) defendants Harold Southworth, Mary McCarthy, Michael Hodgman, and Edward McGrath (collectively, the "Bassett Defendants"); the New York State Division of Human Rights ("DHR"), Helen Torres, Victor DeAmelia, Caroline Downey (collectively, the "State Defendants"); and William Carentz. Dkt. Nos. 1 ("Complaint"), 7 ("Amended Complaint").[1] In a Memorandum-Decision and Order dated August 28, 2017, Dkt. No. 121 ("Order"), the Court addressed the State Defendants' motion for judgment on the pleadings, motions for summary judgment filed by the Bassett Defendants, and Sawabini's cross-motion for summary judgment, Dkt. Nos. 82 ("State Motion"), 104 ("Carentz Motion"), 115 ("Bassett Motion"), 106 ("Sawabini Cross-Motion"); McGrath Mot.

The Court granted the State Motion, the McGarth Motion, and the Carentz Motion, and denied the Sawabini Cross-Motion. Order at 30–31. The Court also granted the Bassett Motion as

---

[1] McGrath moved for summary judgment separately from the other Bassett Defendants. Dkt. No. 116 ("McGrath Motion"). Nevertheless, the Court will collectively refer to McGrath, Southworth, McCarthy, and Hodgman as the Bassett Defendants.

to McCarthy and Hodgman and reserved decision with regard to Southworth's role in Sawabini's confinement. Id. at 30. Pursuant to Rule 56(e)(1) of the Federal Rules of Civil Procedure, the Court requested additional evidentiary material from the Bassett Defendants because they "failed to properly support their assertion that they were aware of threats suggesting that Sawabini posed a risk of physical harm to himself or to others." Order at 24; see also id. at 19 ("The problem for Southworth is that the Bassett Defendants fail to point to any evidence in the record suggesting that Southworth was specifically aware that Sawabini's threats reflected the possibility of violence.").

On September 11, 2017, the Bassett Defendants submitted additional evidentiary material. Dkt. Nos. 122 ("Southworth Declaration"), 123 ("McGrath Declaration"), 124 ("Lowe Declaration"), 125 ("Pinter Declaration"), 126 ("Mercadante Declaration"). Sawabini filed a response on September 25, 2017. Dkt. Nos. 128–29. For the reasons stated below, the Bassett Motion is granted and Sawabini's Amended Complaint is dismissed.

## II.    LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Similarly, a party is entitled to summary judgment when the nonmoving party carries the ultimate burden of proof and has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

In attempting to repel a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

## III.  DISCUSSION

The Court assumes the parties' familiarity with the facts in this case, which were extensively recounted in its Order. Order at 2–6. The only remaining issue is whether Southworth is entitled to qualified immunity for his role in Sawabini's confinement. For the reasons stated below, the Court finds that Southworth had arguable probable cause to detain Sawabini and thus is shielded from liability by the doctrine of qualified immunity.

The Fourth Amendment's protection against unreasonable searches and seizures "adheres whether the seizure is for purposes of law enforcement or due to an individual's mental illness." Myers v. Patterson, 819 F.3d 625, 632 (2d Cir. 2016). "To handcuff and detain, even briefly, a person for mental-health reasons, an officer must have 'probable cause to believe that the person presented a risk of harm to [her]self or others.'" Id. (alteration in original) (quoting Kerman v. City of New York, 261 F.3d 229, 237 (2d Cir. 2001)). "[A] showing of probable cause in the mental health seizure context requires only a 'probability or substantial chance' of dangerous behavior, not an actual showing of such behavior." Hoffman v. County of Delaware, 41 F. Supp. 2d 195, 209 (N.D.N.Y. Mar. 12, 1999) (quoting Monday v. Oullette, 118 F.3d 1099, 1102 (6th Cir. 1997)).

"An officer is entitled to qualified immunity against a suit for false arrest if he can establish that he had 'arguable probable cause' to arrest the plaintiff." Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015) (quoting Zalaski v. City of Hartford, 723 F.3d 382, 390 (2d Cir. 2013)). "Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004) (quoting Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991)). "[T]o determine whether a mental-health seizure is justified by arguable probable cause, a court must review the specific observations and information available to the officers at the time of a seizure." Myers, 819 F.3d at 633.

As detailed in the additional evidentiary materials submitted on September 11, 2017, staff members of O'Connor Hospital told Southworth that Sawabini "had threatened the life of

Barbara Green, O'Connor Hospital's Human Resources Director," multiple times. Southworth Decl. ¶ 3; <u>see also id.</u> ¶ 5 ("[Staff members] each independently perceived Mr. Sawabini's calls to be threats to Ms. Green's safety or life."). Southworth heard that Sawabini had stated "he knew how to make bombs, and repeatedly had stated that Ms. Green's 'days are numbered.'" <u>Id.</u> ¶ 4. Southworth also learned that McGrath had sent Sawabini a letter requesting him to stop making threatening calls. <u>Id.</u> ¶ 6. Nevertheless, a few days after McGrath had sent the letter, a Tri-Town Regional Hospital employee told Southworth that Sawabini had called and stated that he knew "how to make bombs" and that Green's "days are numbered." <u>Id.</u> ¶ 7. Sawabini also said that someone at Tri-Town should "call him back for the safety of your staff." <u>Id.</u> Southworth believed that the local police had contacted Sawabini prior to this call to Tri-Town, and thus "Mr. Sawabini clearly was not heeding warnings, which worried" Southworth. <u>Id.</u> ¶ 8. Southworth then told Dr. Johns that, based on his training and experience, "Sawabini presented a substantial risk of harm to himself or others." <u>Id.</u> ¶ 10.

Sawabini denies making threatening statements to hospital personnel. Dkt. No. 128 ("Response") at 13, 15.[2] For purposes of deciding the Bassett Motion, the Court will assume that Sawabini did not make these threats. However, probable cause does not depend on an officer's receipt of *correct* information; probable cause may exist "even when it is based upon mistaken information, so long as the arresting officer was reasonable in relying on that information." <u>Bernard v. United States</u>, 25 F.3d 98, 103 (2d Cir. 1994); <u>see also</u> <u>Zellner v. Summerlin</u>, 494 F.3d 344, 368 (2d Cir. 2007) ("Probable cause to arrest exists when the officers have knowledge

───────────────

[2] The cited page numbers for this document refer to those generated by the Court's electronic filing system ("ECF").

of, or *reasonably* trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.") (emphasis added). Sawabini has no personal knowledge of the information that hospital personnel provided to Southworth, and there is no evidence in the record to suggest that Southworth should have questioned the trustworthiness of information about Sawabini that he received from multiple sources.

Southworth's testimony demonstrates that he was told by multiple people of statements by Sawabini indicating a possibility of violence. Southworth believed that Sawabini had told several employees about his ability to make bombs, had "threatened the life" of Green multiple times, and had also threatened "the safety of [Tri-Town's] staff." These statements—which were not included in Southworth's earlier declaration, Dkt. No. 115-3, Ex. B—are sufficient to show that it was objectively reasonable for Southworth to believe that Sawabini was "dangerous to himself or to others," Anthony v. City of New York, 339 F.3d 129, 137 (2d Cir. 2003). Therefore, Southworth had arguable probable cause to contact Dr. Johns regarding Sawabini's possible confinement. Cf. Hoffman v. County of Delaware, 41 F. Supp. 2d 195, 209–10 (N.D.N.Y. 1999) (finding that there was "probable cause to issue a pick-up order" because the defendant had learned, *inter alia*, that the plaintiff "threatened violence towards certain city officials").

Because Southworth's actions were objectively reasonable, Southworth is protected from liability by the doctrine of qualified immunity, and the Bassett Motion must be granted with respect to Southworth.

## IV.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Bassett Motion (Dkt. No. 115) is **GRANTED in part** as to

Southworth; and it is further

**ORDERED**, that the Clerk of the Court enter judgment for the Defendants and close this

case; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order on all

parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:        October 06, 2017
              Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge